UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | CRIM. NO. 05-10202-RWZ |
| V. | ) | |
| | ) | |
| SHELTON C. TERRY | ) | |

### DEFENDANT SHELTON TERRY'S MOTION TO SUPPRESS EVIDENCE

Now comes the defendant, SHELTON TERRY, and moves this Honorable Court to exclude from trial of this matter any evidence obtained as a result of the search performed on May 20, 2005 without a warrant and without probable cause to search. As grounds thereof, defendant states the following, as well as relying on the facts set forth in his accompanying affidavit and memorandum of law:

1. On May 20, 2005, at around 3:30 a.m., Shelton Terry was driving north on North Main Street in Brockton in a rented Mercury Grand Marquis. He was heading to his residence on the north side of Brockton. See Terry Affidavit, ¶ 6.

2. According to the Arrest Report, officers Richard Gaucher and Thomas Hyland were patrolling the downtown north end of Brockton when Sergeant Mark Celia called for assistance in stopping a motor vehicle. According to Sgt. Celia, the Brown Mercury Grand Marquis he wished to pull over had been driving around the downtown area the night before.

3. Other than in the early morning hours of May 20, 2005, Shelton Terry had never driven the rented Brown Mercury Grand Marquis. See Terry Affidavit, ¶ 4.

4. According to the Arrest Report, Sgt. Celia observed that the operator was a black male with dredlocks and a white shirt[1].

---

[1] Officer Gaucher's written report, purportedly based in part on information provided by Sgt. Celia, contradicts Sgt. Celia's own grand jury testimony on this point. In response to being asked if he could tell if the occupants of the Grand Marquis on May 20, 2005 were men or women, Sgt. Celia testified: "I couldn't.  Actually, at first I thought the operator was a female, due to the long dreadlocks, loose, hanging down." Tr. of Grand Jury Testimony of August 10, 2005, p. 5. Sergeant Celia also testified at the July 13, 2005 Probable Cause hearing that he thought the operator of the vehicle was a female. Tr. of Probable Cause Hearing of July 13, 2005, pp. 10-11. Defendant Terry suggests that Officer Gaucher's recitation of the incident on May 20, 2005 – prepared immediately after it occurred –

5. Sgt. Celia reported that he observed that the Grand Marquis, after making a left turn onto Haverhill Street, pulled over to the side of the road without signaling [2]. According to Sgt. Celia, the right front passenger made "furtive movements" while the vehicle was pulled over – these "furtive movements" continued as the motor vehicle took a right turn onto Turner Street without signaling. Sgt. Celia reported that the vehicle pulled over to the right again while on Turner Street; this time, however, he stated that the right rear end of the car was sticking out into the travel lane, obstructing traffic. As the car continued to travel and proceeded to turn left on Wyman Street, Sgt. Celia requested another cruiser.

6. Sgt. Celia reported that the vehicle took a right onto Appleton Street – again without signaling – and then pulled over to the side of the road for a third time. At this point, Officer Gaucher – the author of the Arrest Report – arrived on the scene and pulled up next to Sgt. Celia's cruiser. Officer Gaucher notes that the driver of the vehicle immediately drove away at a high rate of speed, "apparently at the sight of both cruisers[3]."

7. The police cruisers followed the Grand Marquis until it came to rest approximately halfway under a chain link fence separating Peron Chiropractic and Rte. 24 North. At that time, both occupants of the vehicle exited the car and began to leave the scene on foot. Officer Gaucher alleges that he observed Shelton Terry make a throwing motion with his right hand as he moved in a southerly direction [4]. Officer Hyland climbed over the chain link fence and secured both defendant Terry and the passenger, Laron Bey.

8. Officer Hyland located one clear plastic baggie which contained four chunks of crack cocaine. Officer Gaucher then located one clear plastic baggie which contained three

---

is the accurate accounting of Sgt. Celia's observation. Sergeant Celia was familiar enough with Mr. Terry to know that he had dreadlocks – and at 6'0 tall and 195 pounds, Mr. Terry is unlikely to be mistaken for a woman. See Terry Affidavit, ¶ 17.

[2] Mr. Terry denies that he failed to use his turn signal at any time while either turning onto a new street or pulling over to the side of the road. See Terry Affidavit, ¶ ¶ 7, 8, and 10. Additionally, Mr. Terry states that he pulled over to the side of the road because the car that was behind him (which he now knows was Sgt. Celia's police cruiser) was following so closely that he thought the car wanted to pass. See Terry Affidavit, ¶ 8. Further, Mr. Terry notes that the car was following so closely with its high beams on, he could not make out the type of car by looking in the rearview mirror. See Terry Affidavit, ¶ 6.

[3] It is, of course, purely speculation on Officer Gaucher's part as to why the Grand Marquis drove away when it did.

[4] Mr. Terry denies that he made a "throwing motion" at any time after he exited the Grand Marquis; additionally, defendant notes that while Officer Gaucher alleges that he saw Mr. Terry make a tossing motion with his right hand, Mr. Terry is left-handed. See Terry Affidavit, ¶ 18.

   small "dime bags" of marijuana[5].

9.  Mr. Terry and Mr. Bey were transported to the Brockton Police Department, where Mr. Terry was booked for trafficking in a Class B controlled substance (crack cocaine), possession with the intent to distribute a Class D controlled substance (marijuana), and possession of a Class D controlled substance (marijuana), among other things[6]. Once the vehicle was at the Brockton Police Department, Sgt. Celia searched the car and located one open clear plastic baggie of marijuana in the hand grip of the right front passenger seat door[7].

10.  Shelton Terry was charged with possession of cocaine base with intent to distribute after being arrested on May 20, 2005.

11.  Absent Mr. Terry's decision to flee from the police on May 20, 2005, there would not have been probable cause to stop him. The actions of the police in this case rendered Mr. Terry's actions involuntary, as he was forced by improper police conduct to flee. Therefore, the Government is not entitled to the fruits of the search and seizure that followed Mr. Terry's actions. See Commonwealth of Massachusetts v. Painten, 368 F.2d 142, 144 (1st Cir. 1966).

12.  The exclusionary rule requires that the drugs retrieved as a result of the illegal seizure and subsequent illegal search be suppressed from Defendant's trial.

13.  Shelton Terry has standing to challenge the admissibility of the drugs.

---

[5] At the direction of Sgt. Celia, Officer Gaucher wrote a "Supplement Report" to "describe how the drugs were located at the scene." According to Officer Gaucher's supplemental report, the baggies containing both the crack and the marijuana were "dry and warm to the touch" even though the ground was "covered with a wet morning dew on this chilly May morning." It is defendant Terry's position that this supplemental report is self-serving and intended only to bolster Officer Gaucher's uncorroborated observation that defendant made a "throwing motion" as he exited the vehicle.

[6] Mr. Terry was also charged with possession of drugs within a school zone, conspiracy to violate the controlled substance act, and nine (9) motor vehicle related offenses.

[7] These are several facts worth noting regarding the location of the drugs found in the hand grip of the right front passenger side door. First, at no time had Mr. Terry been seated on the passenger side of the Grand Marquis – rather, he was always in the driver's seat, with Mr. Bey in the passenger seat. Second, the Grand Marquis was a rental car, and Mr. Terry was neither the person renting the car nor had he ever been in it before the early morning hours of May 20, 2005. Finally, the police pat-frisked both Mr. Terry and Mr. Bey as part of the booking process. No drugs were found on Mr. Terry's person; Mr. Bey, on the other hand, had a dime bag in his pants pocket. Apparently, Mr. Bey stated "That one is mine," when he removed it from his pocket and handed it to the police. Defendant submits that Mr. Bey's statement should be viewed as a self-serving remark that Mr. Bey undoubtedly thought would suggest to the police that while the drugs in his pocket were his, the other drugs found were not.

**WHEREFORE**, Defendant Shelton Terry's Motion to Suppress must be granted to preserve his Fourth Amendment right to be free from unreasonable search and seizure.

        Respectfully submitted,
        **SHELTON C. TERRY,**
        By his attorney,

        /s Christie M. Charles

        George F. Gormley (BBO# 204140)
        Christie M. Charles (BBO# 646995)
        *George F. Gormley, P.C.*
        755 East Broadway
        South Boston, MA 02127
        (617) 268-2999

**Dated:**     April 21, 2006

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 21, 2006.

/s Christie M. Charles

Christie M. Charles

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | CRIM. NO. 05-10202-RWZ |
| V. | ) | |
| | ) | |
| SHELTON C. TERRY | | |

### AFFIDAVIT OF SHELTON TERRY

Now comes SHELTON TERRY, and on oath, does depose and say as follows:

1   I am the defendant in the above-captioned matter.

2.   At about 3:30 a.m. on the morning of May 20, 2005, I was driving north on North Main Street in Brockton in a rented Mercury Grand Marquis. Prior to that time, I had been at Sammy's Bar on Main Street on the north side of Brockton until the bar closed at around 2:00 a.m.

3.   Laron Bey arrived at Sammy's shortly after 2:00 a.m. as the bar was closing. Mr. Bey was driving the Grand Marquis, and was going to give me a ride home. Mr. Bey tossed me the keys to the car and headed into the bar to look for a friend; after I got in the car, I stayed and talked to a girl I know for a while.

4.   As I was getting ready to leave, Mr. Bey returned and said that he was ready to go. As I was already in the driver's seat, he got in the passenger seat. I had not driven this rented Mercury Grand Marquis on May 19, 2005 – or at any other time.

5.   At Mr. Bey's request, we went to the Hess gas station on South Main Street for pizza and cigarettes. This gas station is on the south side of Brockton.

6.   After leaving the Hess station, I was heading to my residence on the north side of Brockton. At some time while I was traveling on North Main Street, I became aware of a car driving behind me. The car was following me closely with its high beams on; therefore, I could not make out the type of car by looking in my rearview mirror.

7.   Eventually, I made a left turn onto Wyman Street. I signaled before I made the turn.

8.   I pulled over to the right side of the road briefly before continuing down Wyman Street because the car behind me was following so closely that I thought it wanted to pass. I signaled before pulling over to the right.

9. The car continued to follow me, pulling over to the side of the road when I did and remaining slightly behind me. When the car did not pass, I continued driving.

10. I next made a right onto Turner Street; again, I used my signal before turning. I also again pulled over to the right side briefly because the car was still following me closely, and I was getting nervous. Again, I used my signal before pulling over.

1    I noticed that the car again pulled over to the side of the road behind me, and again remained slightly behind me.

12. When I reached the end of Turner Street, a car began approaching me. Still blinded by the high beams of the car behind me, I couldn't tell if this was the same car that had been following me or a different one. At that time, I panicked. Having never been in the Grand Marquis before – and being familiar with the neighborhood – I was worried that the driver of the car behind me had mistaken me for someone else and had some sort of "beef" he or she wanted to settle.

.3.    At that point, I proceeded to leave the scene. I did not become aware that it was the police behind me until the sirens and lights started following me.

14. I eventually came to a stop after about three miles, and I exited the car from the driver side. As I exited the vehicle, I swung my right arm to get the driver's door out of my way so that I could get around the car and run. At that time, I was overwhelmed by the situation I found myself in and it was my instinct to run.

15    At the same time I was exiting the vehicle, the passenger (Laron Bey) exited the vehicle on the passenger side. Mr. Bey jumped over the hood of the car, and we both ran in the same direction.

16. Upon realizing that we had reached a dead end, both Mr. Bey and I started walking back towards the police officers and were placed under arrest.

17. As I was being apprehended by one of the police officers, I saw that Sergeant Celia of the Brockton Police Department had pulled up. I know Sergeant Celia – and he knows me – and we have encountered each other on enough prior occasions that Sergeant Celia would know what I look like (to include that I had long dread locks as of May 20, 2005).

18. At no time after I exited the vehicle did I make any sort of "throwing" motion. Further, Officer Gaucher's report of May 20, 2005 indicates that he allegedly observed me making a tossing motion with my right hand. I am left-handed[1].

19. After placing me (and Mr. Bey) under arrest, Officers Hyland and Gaucher found bags containing crack and bags containing marijuana in the area near where my car had come to a stop. Subsequently, the officers apparently found some marijuana and other items in the car.

20. Through multiple conversations with my attorney, George F. Gormley, I have come to learn that I have a Fourth Amendment right to be free from unreasonable searches and seizures. I believe that my Fourth Amendment rights were violated on May 20, 2005.

21. I have also come to learn that, in order to challenge the use of these drugs against me, I must claim possession of the drugs. At the same time, I have also been notified of my Fifth Amendment right to be free from self-incrimination.

22. It is my understanding that I will be able to claim that I possessed these drugs solely for the purpose of challenging the search and seizure on the night of May 20, 2005. I further understand that this admission cannot be used against me at trial for the purpose of finding guilt and that my Fifth Amendment rights will be preserved, unless I choose to take the stand at trial.

23. Based on the foregoing, I possessed the drugs found in and around the Mercury Grand Marquis on May 20, 2005.

24. I hereby object to the use of this admission for any other purpose except for establishing standing for my claim that my Fourth Amendment rights were violated.

---

[1] Further, even if I had made a throwing motion – which I deny that I did – had I thrown something to the left, I would have been throwing it right toward the police officer who was pursuing me; further, if I had thrown something to the right, the substance thrown would have gone into the bushes.

**SIGNED AND SUBSCRIBED UNDER THE PAINS AND PENALTIES OF PERJURY**

THIS __13__ DAY OF __April__, 2006.

_____
SHELTON TERRY