## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | **CRIM. NO. 05-10202-RWZ** |
| **V.** | ) | |
| | ) | |
| **SHELTON C. TERRY** | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SHELTON TERRY'S MOTION TO SUPPRESS EVIDENCE

## I.    BACKGROUND FACTS[1]

On May 20, 2005, at around 3:30 a.m., Shelton Terry was driving north on North Main Street in Brockton in a rented Mercury Grand Marquis.  Officers Richard Gaucher and Thomas Hyland were patrolling the downtown north end of Brockton when Sergeant Mark Celia called for assistance in stopping a motor vehicle.  According to Sgt. Celia, the Brown Mercury Grand Marquis he wished to pull over had been driving around the downtown area the night before[2]; on May 20, 2005, he observed that the operator was a black male with dredlocks and a white shirt[3].

---

[1] Unless otherwise stated, all facts are taken from Brockton Police Officer Richard Gaucher's Arrest Report of May 20, 2005.

[2] Other than in the early morning hours of May 20, 2005, Mr. Terry had never driven this rented Mercury Grand Marquis.  See Terry Affidavit, ¶ 4.

[3] Officer Gaucher's written report, purportedly based in part on information provided by Sgt. Celia, contradicts Sgt. Celia's own grand jury testimony on this point.  In response to being asked if he could tell if the occupants of the Grand Marquis on May 20, 2005 were men or women, Sgt. Celia testified: "I couldn't.  Actually, at first I thought the operator was a female, due to the long dreadlocks, loose, hanging down."  Tr. of Grand Jury Testimony of August 10, 2005, p. 5.  Sergeant Celia also testified at the July 13, 2005 Probable Cause hearing that he thought the operator of the vehicle was a female.  Tr. of Probable Cause Hearing of July 13, 2005, pp. 10-11.  Defendant Terry suggests that Officer Gaucher's recitation of the incident on May 20, 2005 – prepared immediately after it occurred – is the accurate accounting of Sgt. Celia's observation.  Sergeant Celia was familiar enough with Mr.

Sgt. Celia reported that he observed that the Grand Marquis, after making a left turn onto Haverhill Street, pulled over to the side of the road without signaling[4].  According to Sgt. Celia, the right front passenger made "furtive movements" while the vehicle was pulled over – these "furtive movements" continued as the motor vehicle took a right turn onto Turner Street without signaling.  Sgt. Celia reported that the vehicle pulled over to the right again while on Turner Street; this time, however, he stated that the right rear end of the car was sticking out into the travel lane, obstructing traffic.  As the car continued to travel and proceeded to turn left on Wyman Street, Sgt. Celia requested another cruiser.

Sgt. Celia reported that the vehicle took a right onto Appleton Street – again without signaling – and then pulled over to the side of the road for a third time.  At this point, Officer Gaucher – the author of the Arrest Report – arrived on the scene and pulled up next to Sgt. Celia's cruiser.  Officer Gaucher notes that the driver of the vehicle immediately drove away at a high rate of speed, "apparently at the sight of both cruisers[5]."

---

Terry to know that he had dreadlocks – and at 6'0 tall and 195 pounds, Mr. Terry is unlikely to be mistaken for a woman.  See Terry Affidavit, ¶ 17.

[4] Mr. Terry denies that he failed to use his turn signal at any time while either turning onto a new street or pulling over to the side of the road.  See Terry Affidavit, ¶ ¶ 7, 8, and 10.  Additionally, Mr. Terry states that he pulled over to the side of the road because the car that was behind him (which he now knows was Sgt. Celia's police cruiser) was following so closely that he thought the car wanted to pass. See Terry Affidavit, ¶ 8.  Further, Mr. Terry notes that the car was following so closely with its high beams on, he could not make out the type of car by looking in the rearview mirror.  See Terry Affidavit, ¶ 6.

[5] It is, of course, purely speculation on Officer Gaucher's part as to why the Grand Marquis drove away when it did.

The police cruisers followed the Grand Marquis until it came to rest approximately halfway under a chain link fence separating Peron Chiropractic and Rte. 24 North[6]. At that time, both occupants of the vehicle exited the car and began to leave the scene on foot. Officer Gaucher alleges that he observed Shelton Terry make a throwing motion with his right hand as he moved in a southerly direction[7]. Officer Hyland climbed over the chain link fence and secured both defendant Terry and the passenger, Laron Bey.

Officer Hyland located one clear plastic baggie which contained four chunks of crack cocaine. Officer Gaucher then located one clear plastic baggie which contained three small "dime bags" of marijuana[8]. Mr. Terry and Mr. Bey were transported to the Brockton Police Department, where Mr. Terry was booked for trafficking in a Class B controlled substance (crack cocaine), possession with the intent to distribute a Class D controlled substance (marijuana), and possession of a Class D controlled substance (marijuana), among other things[9]. Once the vehicle

---

[6] Mr. Terry anticipates that the Government will emphasize the facts surrounding the "chase" defendant led the police on and the nature in which the Grand Marquis came to rest. It is Mr. Terry's position, however, that as the police caused his actions by their improper conduct, these facts are not relevant.

[7] Mr. Terry denies that he made a "throwing motion" at any time after he exited the Grand Marquis; additionally, defendant notes that while Officer Gaucher alleges that he saw Mr. Terry make a tossing motion with his right hand, Mr. Terry is left-handed. See Terry Affidavit, ¶ 18.

[8] At the direction of Sgt. Celia, Officer Gaucher wrote a "Supplement Report" to "describe how the drugs were located at the scene." According to Officer Gaucher's supplemental report, the baggies containing both the crack and the marijuana were "dry and warm to the touch" even though the ground was "covered with a wet morning dew on this chilly May morning." It is defendant Terry's position that this supplemental report is self-serving and intended only to bolster Officer Gaucher's uncorroborated observation that defendant made a "throwing motion" as he exited the vehicle.

[9] Mr. Terry was also charged with possession of drugs within a school zone, conspiracy to violate the controlled substance act, and nine (9) motor vehicle related offenses.

was at the Brockton Police Department, Sgt. Celia searched the car and located one open clear

plastic baggie of marijuana in the hand grip of the right front passenger seat door[10].

## II.    ARGUMENT

A.    Sergeant Celia's Initial Pursuit of Shelton Terry's Vehicle Was Improper; Therefore, Because Mr. Terry's Subsequent Actions Occurred as an Immediate Result of That Illegality, the Drugs Found must Be Suppressed

It is well-settled that even if a traffic stop is pretextual, it does not violate the Fourth

Amendment if the officer making the stop has "'probable cause to believe that a traffic violation

has occurred.'" United States v. Escalante, 239 F.3d 678, 680-81 (5th Cir. 2001) (quoting Whren

v. United States, 517 U.S. 806, 810 (1996))[11].  On the other hand, if what the police officer

observed did not constitute a traffic violation, there is no "objective basis" for the stop; therefore,

the stop is illegal.  See id. at 681.

In Escalante, defendant was pulled over for violation of a state "careless driving" statute.

See id. at 679.  Defendant argued that the police officer lacked probable cause to pull him over,

---

[10] These are several facts worth noting regarding the location of the drugs found in the hand grip of the right front passenger side door.  First, at no time had Mr. Terry been seated on the passenger side of the Grand Marquis – rather, he was always in the driver's seat, with Mr. Bey in the passenger seat. Second, the Grand Marquis was a rental car, and Mr. Terry was neither the person renting the car nor had he ever been in it before the early morning hours of May 20, 2005.  Finally, the police pat-frisked both Mr. Terry and Mr. Bey as part of the booking process.  No drugs were found on Mr. Terry's person; Mr. Bey, on the other hand, had a dime bag in his pants pocket.  Apparently, Mr. Bey stated "That one is mine," when he removed it from his pocket and handed it to the police.  Defendant submits that Mr. Bey's statement should be viewed as a self-serving remark that Mr. Bey undoubtedly thought would suggest to the police that while the drugs in his pocket were his, the other drugs found were not.

[11] Defendant acknowledges that an observed traffic violation legitimates a stop even if the police do not rely on the traffic violation.  See United States v. Dhinsa, 171 F.3d 721, 725 (2d Cir. 1999). Further, the reasonableness of an officer's actions in making a traffic stop are judged on the objective circumstances surrounding his or her actions and not on his or her subjective intent.  Whren v. United States, 517 U.S. at 814.

and that he crossed over the center line because the police officer was following him so closely. In other words, defendant argued he was paying attention to the police vehicle, which divided his attention and caused him to weave over the divider line. See id at 681. Although the Fifth Circuit affirmed the District Court's denial of defendant's motion to suppress, it noted that defendant's arguments had "persuasive force" and acknowledged that the factual situation presented a "close case." See id.

More significantly, if a defendant's actions are not voluntary but are "forced" by the actions of the police, the police are not entitled to the fruits of any search and/or seizure that follows the defendant's actions. See Commonwealth of Massachusetts v. Painten, 368 F.2d 142, 144 (1st Cir. 1966)[12]. In Painten, police followed defendant and another man to defendant's apartment after becoming aware of a holdup and suspecting that the two men were somehow involved. See id. at 142. One officer knocked on the apartment door, while another officer went around the back of the building. See id. The officer from the back of the building stated that "someone" had thrown "something" out the window after the other officer knocked on the door. See id. Upon finding a paper bag containing two pistols on the fire escape on a floor below, defendant was arrested.

The First Circuit found that the grounds the police had for suspicion of defendant and the other man ". .. did not, even remotely, amount to probable cause for arresting [either of them], either for the holdup or for any other crime." Id. The Court further noted that the police – having no reason to connect defendant to the holdup other than a thought that he was a

---

[12] See also Commonwealth v. O'Laughlin, 25 Mass. App. Ct. 998 (1988) (holding that where an initial pursuit was improper and the defendant's actions occurred as an immediate and direct result of that illegality, the prosecution is not entitled to introduce into evidence the fruits of the unlawful act).

"suspicious character" – set out to arrest and search defendant in the hope that the evidence would develop.  See id. at 143-44.  The First Circuit concluded that the Fourth Amendment makes unlawful exactly the tactics employed by the police in proceeding against Mr. Painten. See id. at 144.  As Mr. Painten's action – throwing the paper bag out the window – was forced by the actions of the police, the Court found it was not voluntary.  See id.  The police were not entitled to the "fruits" of their improper actions.  See id.

In the present case, Mr. Terry submits that he was obeying the traffic laws at the time that Sgt. Celia began following him.  See Terry Affidavit, ¶¶ 7, 8, and 10.  The actions of Sgt. Celia – following closely behind Mr. Terry with his high beams on, as well as remaining close behind Mr. Terry when the Grand Marquis pulled to the side of the road[13] – caused the "suspicious" behavior which the police used to justify their actions in this case.  Absent Mr. Terry's flight – which was precipitated by Mr. Terry's concern that the car behind him was being driven by someone who may have had a "beef" to settle with whomever he or she thought was driving the Grand Marquis[14] – the police did not have probable cause to stop Mr. Terry.  As Mr. Terry's actions were not voluntary but were "forced" by the actions of the police, the Government is not entitled to the fruits of the search and seizure that followed in this case.

B.    Defendant Terry Involuntarily Abandoned the Drugs as a Direct Result of Improper Police Conduct

The drugs involved in this case were not voluntarily abandoned by defendant Terry. Abandonment is a question of intent.  See United States v. Stephens, 206 F.3d 914, 917 (9th Cir.

---

[13] See Terry Affidavit, ¶¶ 6, 8, 9, 10, 11, and 12.

[14] See Terry Affidavit, ¶ 12.

2000) (holding that "[a]n abandonment must be voluntary, and an abandonment that results from [a] Fourth Amendment violation cannot be voluntary"). Additionally, "improper" police conduct that results in the abandonment of property will render the abandonment involuntary and preserve standing for the defendant. See Commonwealth v. Painten, 368 F.2d 142 (1st Cir. 1966). The concern, therefore, is not whether or not defendant Terry abandoned the drugs; rather, the concern is whether the discovery of the drugs was precipitated by unlawful police conduct. See United States v. Jones, 619 F.2d 494, 498 (5th Cir. 1980).

Terry's abandonment of the drugs was involuntary as it was the direct result of the unlawful activities, discussed above, engaged in by Sergeant Celia and his fellow officers. As such, the drugs were not abandoned and Terry has standing to challenge their admissibility.

C.    The Drugs Found as a Result of the Illegal Seizure of the Defendant and the Subsequent Illegal Search of the Defendant's Automobile Should Be Excluded as Evidence at Trial

The exclusionary rule was adopted "to effectuate the Fourth Amendment right of all citizens 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . .'" United States v. Calandra, 414 U.S. 338, 347 (1974) (quoting Weeks v. United States, 232 U.S. 383 (1914); Mapp v. Ohio, 367 U.S. 643 (1961)). Evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of an illegal search and seizure. See id.; see also Wong Sun v. United States, 371 U.S. at 484 (stating that evidence seized during an unlawful search cannot constitute proof against the victim of the search). For all of the reasons set forth above, defendant asserts that the search and seizure that occurred on May 20, 2005 when he was pursued by police for an alleged traffic violation

Page 7

was illegal.  Therefore, the drugs found in and near the vehicle should be excluded as evidence at trial.

      D.    <u>Terry Retains Standing to Challenge the Admissibility of the Drugs – but Claims Ownership for Standing Purposes Only</u>

Defendant Terry strongly believes that his Fourth Amendment rights were violated, and for purposes of establishing standing only, Terry has claimed ownership of the drugs involved. Such a statement is relevant for the purposes of the instant motion only and cannot later be used against Terry at trial on the issue of guilt.  <u>See</u> <u>Simmons v. United States</u>, 390 U.S. 377, 394 (1968); <u>see</u> <u>also</u> <u>United States v. Lewis</u>, 40 F.3d 1325, 1333 (1st Cir. 1994).

## III.    CONCLUSION

For all of the foregoing reasons, the drugs found as a result of the illegal seizure and resulting illegal search should be excluded from evidence at trial.

                  Respectfully submitted,
                  **SHELTON C. TERRY,**
                  By his attorney,

                  /s Christie M. Charles
                  _____
                  George F. Gormley (BBO# 204140)
                  Christie M. Charles (BBO# 646995)
                  *George F. Gormley, P.C.*
                  755 East Broadway
                  South Boston, MA 02127
                  (617) 268-2999

**Dated:**      April 21, 2006

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on April 21, 2006.

                         /s Christie M. Charles

                         _____

                         Christie M. Charles