### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                               )
         v.              )    CR. NO. 05-10202-RWZ
                               )
SHELTON C. TERRY,        )
                               )
           defendant.     )

## GOVERNMENT'S OPPOSITION TO
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The United States of America, by and through its attorneys Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Glenn A. MacKinlay, Assistant U.S. Attorney, hereby opposes the defendant, Shelton Terry's motion to suppress evidence obtained as a result of a search performed on May 20, 2005. The defendant contends that his constitutional rights were violated by the seizure of cocaine base that he discarded onto the ground after the vehicle that he drove at a high rate of speed through a populated neighborhood crashed. The defendant's motion is not only meritless, it raises no legitimate claim that his rights were violated in any manner. First, the defendant has not sufficiently established that he had a legitimate expectation of privacy in the remote area searched. Second, there was no stop of the vehicle driven by Terry before his headlong flight on a high speed chase and his commission of numerous motor vehicle

infractions and motor vehicle offenses.  Finally, the defendant's
motion should be denied without an evidentiary hearing as Terry's
conclusory affidavit fails to raise any dispute concerning a
material fact.


I.        BACKGROUND[1]

On May 20, 2005 at about 3:25 a.m., Sergeant Mark Celia of
the Brockton Police Department was working in a marked cruiser on
the 12:00 a.m. to 8:00 a.m. shift.  He observed a brown Mercury
Grand Marquis bearing Massachusetts registration 69SN27 operating
on North Main Street in Brockton, a high crime area of the city
known to Sergeant Celia to be an area that purchasers of
narcotics drive into searching for drugs.  He frequently ran the
license plates of vehicles that he observed there in the Registry
of Motor Vehicles database to determine if the vehicles were
stolen.  He had observed the same vehicle in the same area of the
city on the previous evening.  Sergeant Celia ran the license
plate of the vehicle and determined that the listed owner of the
vehicle was Enterprise Rent-a-Car, and also that the vehicle had
not been reported stolen.  Sergeant Celia observed the operator
to be a black male with a dread locks hair style, wearing a white

---

[1]     The facts set forth in this opposition come from the
reports of the Brockton Police officers that are attached as
Exhibit 1; the transcript of the detention hearing held on July
13, 2005 that is attached as Exhibit 2; and the Grand Jury
transcripts dated August 10, 2005 that is attached as Exhibit 3.

shirt, later identified as Shelton Terry. Sergeant Celia knew Terry from approximately 15-20 past dealings with him, and had also arrested him previously on a domestic assault and battery charge.[2]

Sergeant Celia followed the vehicle and observed it pull over to the side of the road without signaling. He also observed that the vehicle was occupied by two people. The front seat passenger made furtive movements, including dipping down in the front seat area. Sergeant Celia radioed to the police station for assistance.

Sergeant Celia observed the vehicle pull over to the side of the road with the rear of the vehicle remaining in the lane obstructing traffic. He observed this same erratic driving several times and believed that the driver was attempting to avoid law enforcement by letting him drive past. Sergeant Celia again saw the occupants moving around inside of the vehicle.

---

[2]    Indeed, Terry too was familiar with the Brockton Police Department. His criminal history reflects that he was arrested (and later convicted) on more than nine occasions by members of the Brockton Police Department on felony charges including Distribution of Cocaine; Assault and Battery (on six different occasions); Assault and Battery by means of a Dangerous Weapon (on two occasions); and Unlawful Possession of a Firearm. Additionally, Terry was arrested by Brockton Police officers on countless misdemeanor, and juvenile offenses. (The government will file the criminal history of Terry, Exhibit 4 and move to seal it at that time.) Certainly, he was not a stranger to the Brockton Police department that would be susceptible to "involuntary" flight due to apprehension of police interaction (or criminals for that matter) as his motion and affidavit suggests.

Next, he saw the vehicle turn without signaling onto Appleton Street and again stop on the side of the road for no apparent reason. No person entered or exited the vehicle during the several minutes that the vehicle remained stopped. Sergeant Celia stopped his police cruiser several car lengths away from Terry's vehicle.

Officer Richard Gaucher arrived in the area and pulled his marked cruiser alongside Sergeant Celia's cruiser. Neither officer had their cruiser lights or sirens on at the time. The officers were not attempting to stop Terry's vehicle which was still parked 30-50 feet away.

Terry immediately sped away in the vehicle at a high rate of speed. Upon observing this, both officers activated their lights and sirens and followed Terry's vehicle in an effort to stop the vehicle for the traffic violations. The vehicle continued to speed away without stopping at several stop signs. The vehicle's speed was in excess of 70 miles per hour during the pursuit which traversed residential neighborhoods.

Terry lost control of the vehicle at 990 Pleasant Street. The vehicle crossed over the centerline of the road onto a lawn and struck a chain link fence on the property of Peron Chiropractic that separated the property from the overpass from

the state highway, Route 24 north located below.[3]

Both of the occupants exited the vehicle and fled on foot. Officer Gaucher saw Terry make a throwing motion with his right hand as he ran.  Officer Gaucher was approximately 30 feet away at the time, with sufficient lighting and no obstructions between him and Terry.  With his weapon drawn, Officer Gaucher requested Terry to stop several times.  Terry refused to stop, and was apprehended a short distance away by Officer Thomas Hyland.

The officers searched the area that Officer Gaucher saw Terry make a throwing motion.  Officer Hyland located a clear plastic bag containing four individually packaged clear plastic bags of cocaine base.

Officer Gaucher also located one bag of marijuana in the same area in which the cocaine base was recovered.  The bag contained three individually packaged bags of marijuana within a yellow Ziploc type bag.  The bag of cocaine base, and the bag of marijuana recovered from the ground, were dry and warm to the touch.  The ground itself in the area of the seizure of the suspected narcotics was covered with a wet morning dew, as the weather was in the low 50 degree range.

The second occupant of the vehicle, Labron Bey, was also

---

[3]     A Massachusetts State Trooper was working on a detail that included construction workers on Route 24 below and was in the direct path of travel of the vehicle if the fence had not stopped the vehicle.

apprehended by Officer Hyland a short distance away.  Labron Bey
fled from the vehicle by a different route than Terry and was not
near the area that the cocaine base and marijuana were recovered.

Officer Gaucher searched Terry and located two cellular
telephones in Terry's pocket.  Terry was arrested and charged
with the motor vehicle and narcotics offenses.  Labron Bey was
also arrested.  Terry and Bey were transported to the Brockton
Police Department for booking.

The following items were seized from a search of the trunk
of the vehicle:

- One Pyrex type pie plate
- One small pair of black handled scissors
- One open box of Glad sandwich bags

These items which were located together in a white plastic
shopping bag and are used to package cocaine base for
distribution.

The vehicle was towed to the Brockton Police Department
where a further search was conducted.  Sergeant Celia located an
open clear plastic bag containing marijuana inside a hand grip on
the right front passenger door.  Officer Hyland found twenty
dollars in cash and a cellular telephone on the driver's side
compartment of the vehicle.

Terry was searched during the booking procedure and $435 in
currency, all in small denominations was found on his person.[4]

---

[4]    Labron Bey had $135 in currency on him.

Bey removed one small bag of marijuana from his pocket, handed it to Officer Gaucher and stated: "That one is mine."  The bag containing marijuana was <u>green</u>, different in color from the yellow bag of marijuana recovered from the scene.[5]

Terry received his <u>Miranda</u> rights and stated during the booking procedure that his occupation was "General Help" and listed his employer as "John Jason Top Notch".  Sergeant Celia checked the employer's address that Terry provided and determined that it was not John Jason Top Notch, but rather a hotel -- The Best Western Carleton House.[6]

The officers checked on the status of Terry's drivers license and learned that it was revoked at the time of the incident.  Terry was issued a citation for the motor vehicle violations that he committed.

Terry principally seeks to suppress the cocaine base that was recovered from the ground after he was seen discarding it, as the cocaine base that constitutes the drug trafficking offense.[7]

---

[5]    Labron Bey was prosecuted in state court on the charge of unlawful possession of the marijuana for the substance seized from his person, that he admitted that he owned.

[6]    Records were obtained from the hotel that indicate that Terry had been living there since for nearly one month, since April 21, 2005.  He paid over $1,700 for his room charges during that time-frame, all in cash.

[7]    While it is not clear that the defendant challenges the seizure of the items taken from the vehicle that he drove, their seizure is justified on several grounds.  For example, the

II.      **ARGUMENT**

   1.   **Terry had No Reasonable Expectation of Privacy
        in the Area Searched.**

It is well established that "Fourth Amendment rights are personal, and a proponent of a motion to suppress evidence must prove that the challenged governmental action infringed upon his own Fourth Amendment rights." United States v. Kimball, 25 F.3d 1, 5 (1st Cir. 1994).  The "defendant has the burden of establishing" his Fourth Amendment rights in the premises searched or property seized were violated. United States v. Dunning, 312 F.3d 528, 531 (1st Cir. 2002).  To meet this burden, the defendant must establish "a subjective expectation of privacy" in the place searched and show that "society accepts that expectation as objectively reasonable." United States v. Mancini, 8 F.3d 104, 107 (1st Cir. 1993).  Terry has failed to demonstrate either requirement of a Fourth Amendment expectation of privacy interest.

---

warrantless search was proper as a search incident to a lawful arrest of Terry for the motor vehicle violations and for the narcotics offenses as the search occurred after his arrest. Additionally, the search is justified under the motor vehicle exception to the warrant requirement due to the inherent mobility of the vehicle.

### a.   Terry Lacked a Subjective Expectation of Privacy in the Area Searched.

Terry lacked a subjective expectation of privacy in the place searched by the officers.  Terry seeks to suppress drugs seized from the open field area on Pleasant Street in Brockton. However, Terry offers no evidence to support this claim. Instead, he vaguely suggests that he possessed the narcotics before he abandoned them. (See Affidavit of Shelton Terry, ¶¶ 21-24, "Defendant's Affidavit").  However, he qualifies this statement and also fails to indicate that he discarded the drugs. Id.  This statement is too vague and suspect to be used to support Terry's claim that he had a privacy interest.  The defendant has not sufficiently shown a subjective expectation of privacy in the area of Pleasant Street searched.

### b.   Society Does Not Recognize a Reasonable Expectation of Privacy in the Area Searched.

Terry can not establish that there exists an objectively reasonable expectation of privacy in an empty lot owned by Peron Chiropractic or is state property alongside of the highway.  A legitimate expectation of privacy can not exist in areas exposed to public view. Hester v. United States, 265 U.S. 57 (1924); See Oliver v. United States, 466 U.S. 170, 178 (1984)(unoccupied undeveloped areas outside are not areas that meet a legitimate expectation of privacy).  Likewise, no legitimate expectation of

9

privacy exists where the defendant trespasses onto the property of another. <u>United States v. Place</u>, 462 U.S. 696, 707 (1983)(storage of narcotics on property of another held insufficient to meet legitimate expectation of privacy).

Here, Terry has not, and can not meet the requirements of demonstrating a legitimate expectation of privacy in the area alongside of the road on the property of Peron Chiropractic, or the state that society is willing to recognize.

     **c.**   **<u>Terry Abandoned the Drugs and Any Rights that he May Have had to Contest their Seizure When he Discarded them.</u>**

Terry relinquished any rights that he had to contest the seizure of the drugs when he threw down the drugs before the police apprehended him. A disclaimer of ownership or discarding the contraband supports a finding of abandonment. <u>California v. Hodari D.</u>, 499 U.S. 621, 629 (1991)(fleeing suspect tossed a rock of crack cocaine, held abandoned property); <u>United States v. Sealey</u>, 30 F.3d 7, 10 (1st Cir. 1994)(discarded weapon and ammunition, held abandoned property).

Terry's actions resulted in his abandonment of the contraband, along with his rights to challenge their recovery by the police.

**2.   There was No Stop of Terry's Vehicle by the Brockton Police.**

The officers did not seize the car by following in an unobtrusive manner from a short distance away.  A seizure of property occurs when police "meaningfully interfere" with an individual's possessory interest in the object in question.  See United States v. Jacobsen, 466 U.S. 109, 113 (1984).  A seizure of a person occurs when (1) the police use physical force against a person or (2) the person submits to a show of authority sufficient to cause a reasonable person to believe that he or she is not free to leave the police encounter or refuse to cooperate. See California v. Hodari D., 499 U.S. 621, 625-626 (1991); Florida v. Bostick, 501 U.S. 429, 434-436 (1991).

In the present case, Sergeant Celia followed the vehicle driven by Terry without impeding the vehicles operation.  Terry's reaction was to operate the vehicle in a manner that raised suspicion -- stopping the vehicle several times in an effort to elude the police.  Terry escalated the incident by speeding away from the marked police car and committing arrestable offenses the moment a second police cruiser arrived.  Terry sped away from the marked police car and committed numerous motor vehicle violations for which he was cited by the officers, as discussed below.

Under the Fourth Amendment, Terry's unprovoked flight in the

face of authority may be considered as one of the factors that in the totality of the circumstances supports reasonable suspicion justifying the stop.  "Headlong flight - wherever it occurs - is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."  Illinois v. Wardlow, 528 U.S. 119, 124 (2000)(defendant's unprovoked flight, coupled with his presence in an area of narcotics dealing, justified the suspicion that he was engaged in criminal activity).  See also United States v. Gordon, 231 F.3d 750, 757 (11th Cir. 2000)(the defendant's attempt to avoid police is a relevant consideration in establishing reasonable suspicion); United States v. Scott, 270 F.3d 30, 41 (1st Cir. 2000).

The defendant claims that the actions of the police in this case "rendered Mr. Terry's actions involuntary, as he was forced by improper police conduct to flee." (See Defendant's Motion To Suppress Evidence, ¶ 11.)  However, the defendant's assertion is baseless.  Moreover, he offers no indication of the purported "improper police conduct", and no legal support.  Instead, the defendant points to Commonwealth of Massachusetts v. Painten, 368 F.2d 142, 144 (1st Cir. 1966) to support his position.  The defendant's reliance is misplaced.

Painten is distinguishable from this case on its facts.  In Painten, the defendants did not flee from the police. See Id. The police had no evidence to connect the defendants to any

crime. Id.  Moreover, the evidence that was seized was located in
the defendant's apartment. Id.  Here, the police followed the
defendant's vehicle in their police cruiser, engaged in a pursuit
when the suspects fled, and apprehended both suspects outside of
the vehicle after multiple traffic infractions and after the
suspects crashed their vehicle.

The Brockton Police did nothing to warrant the defendant's
flight.  The Court has explicitly stated that "[a] police officer
may follow or closely watch a suspect without infringing the
suspect's constitutional rights." United States v. Rogers, 2005
WL 478001, 3 (D. Mass. 2005). See also, Michigan v. Chesternut,
486 U.S. 567, 574-576 (1988) (officers shadowed a suspect by
driving along next to him while he was running).  Additionally,
the police are "not required to have 'a particularized and
objective basis for suspecting [respondent] of criminal
activity,' in order to pursue him." Chesternut, at 576, (quoting
United States v. Cortez, 449 U.S. 411, 417-418 (1981)).  The
defendant has not demonstrated any misconduct by the police in
their tailing from a significant distance the suspect while he
was in a vehicle, nor does the government have to show any
particular criminal reason for following him.

The next question is whether the defendant's actions in
fleeing were voluntary, or if they were provoked by the police.
The defendant has not provided any evidence that his actions were

involuntary and provoked by the police.  While the First Circuit
has not specifically defined "unprovoked flight," the police
action of following a particular vehicle, without more, is not
sufficient to provoke flight.[8]

The police were within their Constitutional bounds to follow
the defendant's vehicle, and did not engage in any other
specified misconduct.  The Eleventh Circuit, in <u>Franklin</u>, has
invoked a reasonable person test which asks whether a reasonable
person would have fled in the same manner as the defendant.  In
<u>Franklin</u>, the defendant was apprehended by a team of uniformed
S.W.A.T. Team officers who were dressed in body armor, fatigues,
boots and sidearms while he was loitering underneath a "no
loitering" sign.  <u>Franklin</u>, at 1300.  The officers pulled up their
vehicles near the defendant and fled upon sight of them.  <u>Id</u>.  The
Court held in this case that a reasonable person would <u>not</u> have
fled because although a S.W.A.T. team can be intimidating, there
was nothing extraordinary about how the team arrived.  <u>Id</u>.
Accordingly, a reasonable person would not have reacted, even if
intimidated, the way the defendant reacted by fleeing.  <u>Id</u>.

In this case, the argument that Terry's flight was provoked
is even less compelling than in the <u>Franklin</u> case.  Terry was

---

[8] Officers cannot "improperly provoke – for example, by
fraud – a person into fleeing and use the flight to justify a
stop." <u>United States v. Franklin</u>, 323 F.3d 1298, 1302 (11th Cir.
2003).

merely being followed in a vehicle by a police cruisers.  He was
an experienced criminal familiar with the Brockton Police
Department through his numerous arrests by them for over fifteen
years. (See Exhibit 4, Criminal History of Terry).  Common sense
dictates that Terry fled because his license to operate a motor
vehicle was suspended, and importantly -- he did not want to be
apprehended by the police with drugs in his possession.[9]  A
reasonable person would not have fled the scene, violated several
traffic laws in the way that Terry did, let alone a veteran
criminal.  Moreover, the mere presence of the police is not
sufficient to provoke flight under this test.

In the totality of the circumstances, the Brockton Police
officers had reasonable suspicion to pursue Terry's vehicle after
it sped away without any meaningful provocation by the police.

**3.   Terry Committed Motor Vehicle Violations Warranting the
Stop of the Vehicle.**

The stop of Terry's vehicle is also justifiable based upon
the commission of motor vehicle offenses in the presence of the
officers.  Specifically, Terry committed motor vehicle
violations, including speeding, before the officers pursued the
vehicle.  The Brockton Police officers issued a citation to Terry

---

[9]      The government does not argue that Terry's suspended
license was yet another basis for the stop because the officers
did not know it was Terry driving the vehicle until after Terry
crashed his vehicle, fled, and discarded the drugs.

alleging the following motor vehicle infractions: Obstructing the
Flow of Traffic; Speeding; Operating to Endanger; Failure to Stop
for a Stop Sign (two counts); Failure to Stop for a Police
Officer; and Operating a Motor Vehicle with a Revoked Driver's
License. (See attached Massachusetts Uniform Citations, M2302702,
and M2302703, Exhibit 5.)  These motor vehicle infractions also
provide the basis for the efforts of the police to stop Terry.
In Whren v. United States, 517 U.S. 806 (1996), the Supreme Court
reaffirmed that as long as officers have probable cause to
believe a traffic violation has occurred, it is reasonable for
them to stop an automobile and temporarily detain the driver.
Id.; see also Maryland v. Wilson, 519 U.S. 408 (1997) (officer
making traffic stop may order passengers out of car pending
completion of stop); United States v. Chhien, 266 F.3d 1, 8 (1st
Cir. 2001) (motor vehicle violation forms a proper basis for the
stop of a vehicle).

Terry's commission of numerous motor vehicle violations
before the police commenced following Terry's vehicle indicates
that their efforts at stopping Terry's vehicle was proper.[10]

_____

[10]    The government asserts that the police officers never
did stop Terry's vehicle because he fled in the vehicle, crashed
the vehicle, fled on foot, and abandoned the contraband without
the police stopping the defendant.  Indeed, Terry was not stopped
until he was ordered at gunpoint to stop fleeing and return to
the scene where he was arrested.

III.        TERRY HAS NOT ESTABLISHED A RIGHT TO AN
            EVIDENTIARY HEARING

Terry's response to this will undoubtedly be that he has
sufficiently contested the government's claims by simply filing
his affidavit and that an evidentiary hearing must therefore be
held.  In the particular facts of this case (and the specific
infirmities of his affidavit), this argument also fails.

"[A] criminal defendant has no absolute or presumptive right
to insist that the district court take testimony on every
motion." United States v. Panitz, 907 F.2d 1267, 1273 (1st
Cir.1990).  Evidentiary hearings on motions to suppress are
required only when a defendant alleges facts that are
"sufficiently definite, specific, detailed, and nonconjectural,
to enable the court to conclude that a substantial claim is
presented." United States v. Lewis, 40 F.3d 1325, 1331 (1st Cir.
1994).  See also United States v. McGill, 11 F.3d 223, (1st Cir.
1993) ("Courts are busy places.  Not surprisingly, then,
evidentiary hearings on motions are the exception, not the rule.
We have repeatedly stated that, even in the criminal context, a
defendant is not entitled as of right to an evidentiary hearing
on a pretrial or post-trial motion."); United States v. Staula,
80 F.3d 596 (1st Cir. 1995)("A hearing is required only if the
movant makes a sufficient threshold showing that material facts
are in doubt or dispute, and that such facts cannot reliably be

resolved on a paper record.").

Viewed against these principles, the conclusory allegations of Terry's affidavit fail to establish any basis for relief and any basis on which an evidentiary hearing should be held. Even though the government's version of the facts (as contained in the Grand Jury testimony, reports of Brockton Police officers and detention hearing testimony) was disclosed to Terry at the outset of this case, Terry has failed to file anything that properly demonstrates the Court's need to hold an evidentiary hearing. For example, a critical issue in this case is of course exactly what Terry did in the brief period between the time that the police followed him, and the time that he elected to violate numerous motor vehicle laws by speeding away at a high rate of speed. (See discussion, above.) Notwithstanding the significance of the issue, Terry has failed to properly address it, stating only that he was "nervous". (Defendant's affidavit, ¶¶ 10- 12) Because that allegation does not dispute the police officer's testimony regarding Terry's unexplained headlong flight, there is no basis on which to do anything other than deny the motion to suppress.

Terry's perfunctory affidavit is also significant for what it does *not* contain. For example, no mention is made of what he did or the circumstances of his interaction with the police. Specifically, he blatantly ignored the triggering factor to his

18

high speed flight – the arrival of the second marked police
cruiser that approached towards his vehicle and was plainly
visible to him and Labron Bey.  Instead, Terry claims ignorance
that it was a marked police cruiser behind him. (Defendant's
affidavit, ¶¶ 6, 12)  This statement is not credible given the
length and route of the flight of Terry's flight, and the arrival
of the second cruiser from a direction that was unaffected by the
alleged "high beams" of the headlights of the vehicle behind him.
(Defendant's affidavit, ¶¶ 6, 12)  Moreover, there was a second
person in the vehicle, Labron Bey that was easily on a position
to observe that it was a marked police car that was following
them, and could certainly have alerted Terry to stop (if Terry
had intended to stop).  Nor has Terry bothered to describe why he
failed to stop once he knew that it was a police cruiser behind
him with it's lights and siren activated signaling him to stop
(and he admitted so in his Affidavit). (See Defendant's
affidavit, ¶¶ 13-14)  Specifically, Terry failed to indicate why
he traveled *three miles* knowing that the police were in pursuit,
and not some fictitious criminal that may have had "some sort of
beef." Id.

Since Terry hasn't sufficiently described what happened and
hasn't even established that it was in fact "a search," he hasn't
even approached providing the "definite, specific, detailed, and
nonconjectural" allegations required to justify an evidentiary

19

hearing.  See also United States v. Castellano, 610 F.Supp. 1359, 1439 (S.D.N.Y.1985) ("A defendant who seeks to suppress evidence bears the burden of showing that disputed issues of material fact exist before an evidentiary hearing is required.  No evidentiary hearing need be held where a defendant's allegations are general and conclusory or are based upon suspicion and conjecture"); United States v. Sophie, 900 F.2d 1064, 1071 (7th Cir. 1990) (requiring an evidentiary hearing "only if the party requesting the hearing raises a significant, disputed factual issue"); United States v. Harrelson, 705 F.2d 733 (5th Cir.1983)("general or conclusory assertions, founded upon mere suspicion or conjecture, will not suffice").


IV.       CONCLUSION

     The defendant's claim that the police engaged in misconduct and that his actions were involuntary is unsupported by the facts and the law.  His motion to suppress the evidence should be denied because the police were within their Constitutional bounds to follow his car, and his flight was unprovoked.

                         Respectfully submitted,

                         MICHAEL J. SULLIVAN
                         United States Attorney


                    By:  s/ Glenn A. MacKinlay
                         GLENN A. MACKINLAY
                         Assistant U.S. Attorney

                              20

DATED: May 26, 2006

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served upon the persons listed below a copy of the foregoing by efiling and mailing the document:

George Gormley, Esq.
Counsel of Record for the defendant

This 26th day of May, 2006.

<u>S/ Glenn A. MacKinlay</u>
GLENN A. MACKINLAY
ASSISTANT UNITED STATES ATTORNEY