UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 05-10202-RWZ

UNITED STATES OF AMERICA

v.

SHELTON C. TERRY

MEMORANDUM OF DECISION

June 20, 2006

ZOBEL, D.J.

     In the early morning hours of May 20, 2005, Sergeant Mark Celia, operating a police cruiser, observed a Mercury Grand Marquis driving on North Main Street in Brockton, Massachusetts. On the previous night, he had observed the same car in the same area, which was known to be frequented by drug traffickers. Celia ran the license plate of the vehicle, determined that it was a rental car, and began trailing it. He observed two individuals in the front of the car and saw the passenger on the right side of the vehicle bend down into the front seat area a few times. On more than one occasion, the driver of the Grand Marquis pulled over to the side of the road; on at least one such occasion, the rear of the vehicle remained in the lane, partially obstructing traffic. Each time, Celia stopped his cruiser behind the Grand Marquis, rather than passing. At some point, Celia radioed to the police station for assistance. Eventually, Officer Richard Gaucher arrived, also in a marked police cruiser, and pulled up next to Celia's cruiser. The Grand Marquis immediately sped away.

Following a high-speed chase through residential neighborhoods that lasted approximately three miles, the driver of the Grand Marquis lost control of the vehicle and crashed into a chain link fence on the property of Peron Chiropractic. Both defendant Shelton Terry, who was driving, and Labron Bey, the passenger, fled on foot. Gaucher asserts that he saw defendant make a throwing motion with his right hand. Although defendant refused to stop, he was chased and apprehended by Officer Thomas Hyland. When the officers later searched the area where Gaucher saw defendant make a throwing motion, they found a plastic bag containing cocaine base and a plastic bag containing marijuana. An immediate search of defendant's person yielded two cellular telephones, and a further search at the police station yielded $435 in small bills. Both defendant and Bey were arrested, and additional marijuana was discovered on Bey's person as well as in the vehicle. The police also recovered from the trunk of the Grand Marquis a pyrex plate, a small pair of scissors, and an open box of sandwich bags, items which are commonly used to package cocaine base for distribution. Defendant was ultimately indicted on one count of possession of cocaine base with intent to distribute, in violation of 18 U.S.C. § 841(a)(1). He now moves to suppress all of the evidence seized on May 20, 2005.

Defendant argues that both his flight and his subsequent abandonment of the drugs were involuntary.[1] Specifically, he claims (1) that he was obeying the traffic laws, (2) that Celia therefore had no reason to follow him, (3) that because of Celia's

---

[1] Defendant concedes for purposes of this motion that he had possession of the drugs. (Def.'s Aff. ¶¶ 21-24).

improper shadowing, defendant was "forced" to flee, (3) that his abandonment of the drugs was likewise involuntary, and (4) that the government is not entitled to the fruits of its unlawful conduct, i.e., the initial, allegedly improper pursuit.  Essentially, defendant argues that the officers trailing him constituted an improper seizure, and the fruits of that seizure should therefore be suppressed.  Cf. Michigan v. Chesternut, 486 U.S. 567, 567 (1988) (considering argument that pursuit constituted seizure implicating Fourth Amendment protections).  For several reasons, this argument is unpersuasive.

First, when Celia initially decided to follow the Grand Marquis, he was engaged not in a pursuit, that might potentially constitute a seizure, but rather in "proper and unoffensive surveillance." Commonwealth v. O'Laughlin, 25 Mass. App. Ct. 998, 999 (1988) (citing Commonwealth v. Groves, 25 Mass. App. Ct. 933, 935 (1987).  Thus, in United States v. Montgomery, 561 F.2d 875, 878 (D.C. Cir. 1977), the court recognized that an officer who possesses an "inarticulate hunch" about a potential suspect has reason to "keep an eye" on that suspect, though without more he does not have grounds for seizure.  Celia had just such a hunch, based upon the time of night (approximately 3:30 a.m.), his familiarity with the area and its drug-trafficking problems, and his observation of the same car in the same area on the previous evening.  Based upon that hunch, Celia followed the car, but never impeded its passage or signaled for it to stop, by way of siren or flashing lights.  This conduct did not rise to the level of pursuit or seizure.  See Groves, 25 Mass. App. Ct. at 935; see also Chesternut, 468 U.S. at 575-76 (finding that presence of police car driving parallel to running

pedestrian, while "somewhat intimidating," does not, "standing alone, constitute a seizure"). And it did not force defendant to take flight.

Moreover, while Celia may have possessed only an "inarticulable hunch" when he first began following the Grand Marquis, the behavior he subsequently observed more than justified the officers' eventual pursuit of the vehicle. Whether or not defendant violated the traffic laws is a matter of dispute. But it is undisputed that defendant pulled off the road several times. Given the time of day as well as the location, such conduct may well have served to confirm Celia's initial hunch. More importantly, as soon as Gaucher arrived and pulled up next to Celia, defendant sped away. "An individual's flight combined with other observations by a police officer may support reasonable suspicion." United States v. Scott, 270 F.3d 30, 41 (1st Cir. 2001); see also United States v. Franklin, 323 F.3d 1298, 1301 (11th Cir. 2003) (defendant's "presence in a problem area, at night," and his flight upon seeing officers were grounds for reasonable suspicion). Contrary to defendant's contention, the presence of Celia and Gaucher—who were not yet actively pursuing defendant and who had not given any indication that they intended to stop defendant—cannot be said to have provoked his flight. Cf. id. at 1303 (defendant's flight was not provoked where clearly marked S.W.A.T. team van stopped near defendant and officers existed the van, though such police presence may have been "intimidating"). Indeed, the police only turned on their sirens and lights after defendant had taken flight; at that point, reasonable suspicion supported their pursuit.

The circumstances of this case distinguish it from <u>Commonwealth v. Painten</u>, 252 F. Supp. 851 (D. Mass. 1966), <u>aff'd</u> 368 F.2d 142 (1st Cir. 1966), <u>dismissed as improvidently granted</u>, 389 U.S. 560 (1968), upon which defendant primarily relies. In that case, the police—with scant grounds for suspicion that "did not, even remotely, amount to probable cause for arresting [the defendant]"—entered the defendant's apartment for purposes of arresting and searching the men "in the hope that evidence would develop." <u>Painten</u>, 368 F.2d at 143, 144. Because the officers lacked probable cause to arrest the defendant, their intrusion into his apartment for that purpose was improper and "what they discovered as a result of the illegal entry" was therefore suppressed. <u>Painten</u>, 252 F. Supp. at 857. Here, by contrast, there was nothing improper in Celia's initial surveillance of defendant, nor was there anything improper in the officers' eventual pursuit of defendant, after he had fled at high speed. Neither the initial surveillance, nor the eventual high-speed chase constituted an improper seizure. And thus neither action can be compared to the officers' illegal entry in <u>Painten</u>. In the absence of illegal or improper conduct on the part of the officers, defendant's claim that he was "forced" to flee or to abandon the drugs cannot succeed. <u>See</u> <u>United States v. Quiroz-Hernandez</u>, 48 F.3d 858, 864 (5th Cir. 1995) (abandonment not involuntary unless pursuit was improper).

Accordingly, defendant's motion to suppress (#27) is denied. The motion for an extension of time (#26) is allowed.

| | |
|---|---|
| 06/20/06 | /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |