UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | CRIM. NO. 05-10202-RWZ |
| **V.** | ) | |
| | ) | |
| **SHELTON C. TERRY** | ) | |

### DEFENDANT SHELTON TERRY'S SENTENCING MEMORANDUM

Now comes defendant SHELTON TERRY, through counsel, and hereby submits this Memorandum in preparation for his sentencing.

**I.   Mr. Terry's Position Regarding his Guideline Sentencing Range, Without Reference to Departures**

As set forth in the Presentence Report (PSR), the Probation Officer has calculated the Guideline Sentencing Range (GSR) to be 262 to 327 months. In arriving at this GSR, the Probation Officer contends that pursuant to U.S.S.G. § 2D1.1(c)(7), the base offense level (BOL) attributable to Mr. Terry is 26. Three (3) levels are then deducted for acceptance of responsibility, thereby making the total offense level (TOL) 23[1]. The offense level is then elevated to 37 (prior to taking into account the 3 level reduction for acceptance) because the career offender provisions at U.S.S.G. § 4B1.1 are applicable. Section 4B1.1 directs that the offense level is determined by the offense statutory maximum, which in this case is life

---

[1] With a TOL of 23, and a CHC of VI (Mr. Terry does not dispute the calculation of his criminal history points and category), Mr. Terry's GSR would be 92 to 115 months. The "high end" of the GSR, therefore, would be five (5) months less than the mandatory minimum sentence of one hundred twenty (120) mandated by 21 U.S.C. § 841(b).

imprisonment (with a corresponding Guideline offense level of 37). Once three points are deducted for acceptance of responsibility, the TOL is 34.

As this section addresses defendant's position regarding his Guideline Sentencing Range without reference to departures, Mr. Terry agrees with the Probation Officer that with a total offense level of 34 and a CHC of VI, his GSR is 262-327 months. For all the reasons set forth in Mr. Terry's objection to ¶ 45 of the PSR, however, defendant renews his objection to the application of the career offender provision after the application of the statutory enhancement authorized by the filing of the "851 Information" and argues that his total offense level should be 34. With a 3 level reduction for acceptance of responsibility, Mr. Terry's TOL should be 31; with a TOL of 31 and a CHC of VI, Mr. Terry's GSR is 188-235 months.

**II.    Mr. Terry's Sentence After Consideration of the Factors Set Forth in 18 U.S.C. § 3553(a)**

In recognition of the fact that the United States Sentencing Guidelines were rendered "advisory" by the Supreme Court's decision in United States v. Booker / United States v. Fanfan, 125 S.Ct. 738 (2005), defendant submits that a sentence lower than the Guideline Sentencing Range (GSR) is appropriate when considering the factors the Court is directed to consider in imposing a sentence pursuant to 18 U.S.C. § 3553(a). Defendant therefore submits that a sentence of ten (10) years is appropriate.

Section 3553(a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant when imposing a sentence. It is worthwhile to note that "when put side by side, the Guideline provisions and statutory provisions

under section 3553(a) often contradict one another." United States v. Myers, 2005 U.S. Dist. LEXIS 1342 (S. D. Iowa Jan. 26, 2005) (citing United States v. Ranum, 2005 U.S. Dist. LEXIS 1338 (E.D. Wis. Jan 14. 2005)).  For example, under the Guidelines, courts are generally prohibited from considering the defendant's age (§ 5H1.1), education and vocational skills (§ 5H1.2), socio-economic status (§ 5H1.10), or lack of guidance as a youth (§ 5H1.12).  Section 3553(a)(1), however, requires a Court to consider these factors, as they compose the "history and characteristics" of a particular defendant and are necessary components to an individualized sentence.  As explained more fully below, a sentence of ten (10) years is therefore appropriate and adequate.

Section 3553(a)(1) requires the Court to consider the history and characteristics of the defendant.  As reported during the Presentence Interview, Mr. Terry has never had any contact with his biological father (¶ 128).  His mother, Carnita Terry, is currently incarcerated at MCI-Framingham (¶ 129).  Mr. Terry was physically abused by his mother, a drug addict (¶ 134).  Mr. Terry reported to Dr. Fife (as memorialized in her October 30, 2006 report) that his childhood was spent witnessing domestic violence and drug abuse.  Mr. Terry's account of his childhood is corroborated by both his sister, Tamiko, and his mother, Carnita.  Tamiko Terry recalls that her and Shelton's mother abused drugs and "put her drugs and partying ahead of the needs of her own children."  Carnita Terry herself wrote from jail to inform the Court that she feels responsible for the trouble Shelton has gotten into over the years.  Ms. Terry notes that she is a full-fledged drug addict and alcoholic who was consumed by her addiction and was "not a mother to Shelton when he needed [her] the most."

Mr. Terry reported to the Probation Officer that he was in special education classes as a child (135). Mr. Terry is uncertain as to why he was in special education classes with "mentally handicapped children" and dropped out of school after the eighth grade (135). As Dr. Fife notes, Mr. Terry comes across as much brighter than his educational history would suggest and is thoughtful and well-spoken.

As a result of his unstable home environment and his mother's admitted inability to take care of her children, Mr. Terry began working at the age of 8 in order to take home money to buy food for his younger brother and sister. Unfortunately, often-times Ms. Terry would take the money and use it to buy drugs. Tamiko Terry reports that her brother would "basically [do] anything to earn a buck to help take care of home" and also states that their mother would often steal the money for drugs. According to Tamiko Terry, it was Shelton and their older sister who made sure that there was food on the table, school supplies available, and clean clothes to wear.

Mr. Terry was committed to DYS custody at the age of 14; he reports that the conditions in DYS were better than home and he received a better education (136). Mr. Terry explained to Dr. Fife that he eventually became involved in a gang because it made him feel like he belonged and because he was so angry. Unfortunately, Mr. Terry became violent as a way of demonstrating to others that he was strong and capable – he had no idea that life could or should be any different.

Mr. Terry acknowledges that a discussion of his "history and characteristics" would not be complete without including information regarding his history of domestic violence. As Mr. Terry described to Dr. Fife, he "quickly adopted the life his mother modeled for him" – becoming involved in a series of relationships all of which eventually ended in or involved

serious domestic violence.  Rose Marie Silva, a lifelong friend of Mr. Terry's (who dated him for fourteen (14) years), wrote to the Court that Mr. Terry has always been there for her, no matter what kind of situation she was in, and describes Mr. Terry as "a funny person with a heart of gold."  Ms. Silva is all too aware of Mr. Terry's temper and the violence of which he is capable; she is also aware, however, that Mr. Terry would do anything for his children and for a friend in need.  Mr. Terry's own daughter, eleven year old Treseme, writes that her father is a "caring father" who would not let anything bad happen to her.  As Dr. Fife notes, Ms. Terry's criminal history is undoubtedly related to his upbringing.  It seems equally true that Mr. Terry has spent much of his life taking care of other children so that they did not have to suffer the way he did.  This was true as a child, when young Shelton made sure there was food on the table for his younger brother and sister; it is equally true as an adult, when Mr. Terry made sure that not only his own children, but also his children's half brothers and sisters, had food to eat and clothes to wear to school.

A sentence of ten (10) years imprisonment is more than adequate given the history and characteristics of the defendant in this case.

The nature and circumstances of the offense also warrant a sentence of ten (10) years.  Mr. Terry acknowledges that the offense for which he is about to be sentenced is serious.  It is worth noting, however, that Mr. Terry has been convicted of possession with intent to distribute 13.63 grams of cocaine base.  Based solely on the Drug Quantity Table located at U.S.S.G. § 2D1.1(c), the base offense level for possession of at least 5 grams but less than 20 grams of cocaine base is 26.  Once credit is given for acceptance of responsibility, Mr. Terry's TOL would be 23; with a TOL of 23 and a CHC of VI, the GSR would be 92 to 115 months.  In this case, the

severity of the sentence called for in the advisory guidelines – 262 to 327 months – is driven completely by Mr. Terry's criminal history as opposed to by the seriousness of the offense charged in the Indictment.  Mr. Terry's Criminal History Category – which is VI, even without regard to application of the career offender guidelines – already takes into account the seriousness of defendant's criminal record.  The ten (10) year sentenced mandated by § 841(b) is more than adequate given the nature and circumstances of Mr. Terry's offense.

Section 3553(a)(2) requires the Court to consider the need for the sentence imposed to take into consideration four (4) specific factors.  These four (4) factors are as follows: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  As addressed more fully below, a sentence of ten (10) years would adequately take these four factors into consideration.

Section 3553(a)(2)(A) requires the Court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.  It is Mr. Terry's position that a sentence of ten (10) years does reflect the seriousness of the offense and provides just punishment.  This is particularly true given the fact that the statute of conviction requires a term of supervised release, and pursuant to U.S.S.G. § 5D1.2(b), that term shall be 8 years. Should the Court sentence Mr. Terry to ten (10) years in prison, he will be forty-one (41) by the time he is released.  By the time Mr. Terry completes the subsequent eight

(8) years of supervised release, he will be nearly fifty (50). At this age, Mr. Terry will surely have learned to confirm his conduct to the requirements of the law.

Section 3553(a)(2)(B) requires the Court to impose a sentence that affords adequate deterrence to criminal conduct. A sentence of ten (10) years affords adequate deterrence to criminal conduct for Mr. Terry. As set forth in the October 30, 2006 report of Dr. Alison Fife[2], Mr. Terry has a "better than average amount of insight into why he has been in trouble to the large extent that he has," and he is both remorseful for his actions and ready and willing to serve the sentence imposed by the court. Ten years is a very long time for Mr. Terry to be incarcerated and away from his two children, Treseme and Shelton. One thing that is clear from the letters written on Mr. Terry's behalf is that he loves his children very much, and provided them with both financial and emotional support. Ten years is also a more than adequate amount of time for Mr. Terry to continue contemplating his actions, as well as to undergo anger management counseling and hopefully gain the educational and vocational training he needs so that when he is released, he can seek and maintain gainful employment to support himself. Mr. Terry is fully aware that the sentence he faces is a "last chance" or "wake up call" – his current situation has made clear to him that he cannot and will not engage in criminal conduct in the future.

Section 3553(a)(2)(C) requires the Court to impose a sentence that protects the public from further crimes of the defendant. As noted above, Mr. Terry will have plenty of time to reflect on his actions and plan for a productive future while serving the sentence imposed on the Court and while completing his 8 years of supervised release. Mr. Terry is a relatively young

---

[2] This report was produced with Mr. Terry's objections to the PSR, and is not being included with this Sentencing Memorandum so that the report does not become part of the public record in this case.

man who has had a very difficult life, but he is committed to doing the right thing in the future and looks forward to starting a new life outside the confines of the prison system after he has served his time in this case. The concern that the public needs to be protected from potential further crimes of the defendant is minimal in this situation.

Finally, § 3553(a)(2)(D) requires the Court to impose a sentence that provides the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. A sentence of ten (10) years would be more than adequate for Mr. Terry to receive his GED, as well as vocational training that would enable him to obtain gainful employment once he has completed his sentence. Additionally, ten (10) years is plenty of time for Mr. Terry to get needed substance abuse treatment and anger management counseling.

Given the facts stated above, as well as the presence of a mandatory post-incarceration term of supervised release, defendant suggests that a sentence of ten (10) years is appropriate.

Respectfully submitted,
**SHELTON TERRY**
By his attorney,

 /s Christie M. Charles
George F. Gormley (204140)
Christie M. Charles (646995)
***George F. Gormley, P.C.***
755 East Broadway
South Boston, MA 02127
(617) 268-2999

**Dated**:   November 13, 2006

CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 13, 2006.

/s Christie M. Charles

Christie M. Charles